### COLTON *v.* COLTON.

*(Circuit Court, D. California.* September 22, 1884.)

WILL—PRECATORY TRUST.

    C., by will, left all of his property to his wife, with full power of disposition, adding these words: "I recommend to her the care and protection of my mother and sister, and request her to make such gift and provision for them as, in her judgment, will be best. I also request my dear wife to make such provision for my daughters, H. and C., as she may, in her love for them, choose to exercise." *Held,* that no precatory trust was created by the use of the words of recommendation and request.

In Equity.

*W. W. & H. S. Foote* and *Grove L. Johnson,* for complainant.

*Crittenden Thornton* and *Stanly, Stoney & Hayes,* for defendant.

SAWYER, J. This is a bill in equity to establish a trust in favor of complainant in the estate of the late David D. Colton, deceased, in the hands of his devisee and legatee, Ellen M. Colton, and to obtain a decree against the defendant requiring her to make a suitable provision out of the estate devised and bequeathed to defendant for the maintenance of complainant. The will out of which the suit arises is as follows, to-wit:

"I, David D. Colton, of San Francisco, make this my last will and testament. I declare that all of the estate of which I shall die possessed is community property, and was acquired since my marriage with my wife. I give and bequeath to my said wife, Ellen M. Colton, all of the estate, real and personal, of which I shall die seized or possessed, or entitled to. I recommend to her the care and protection of my mother and sister, and request her to make such gift and provision for them as, in my judgment, will be best. I also request my dear wife to make such provision for my daughter Helen, wife of Crittenden Thornton, and Carrie, as she may, in her love for them, choose to exercise. I hereby appoint my said wife to be the executrix of this, my last will and testament, and desire that no bonds be required of her for the performance of any of her duties as such executrix. I authorize and empower her to sell, dispose of, and convey any and all of the estate of which I shall die seized and possessed, without obtaining the order of the probate court or of any court, and upon such terms and in such manner, with or

without notice, as to her shall seem best. If my said wife shall desire the assistance of *any one in the settlement of my estate, I hereby appoint my friend* S. M. Wilson, of San Francisco, and my secretary, Charles E. Green, to be joined with her in the said executorship, and authorize her to call in either or both of the said gentlemen to be her co-executors. And, in case she shall so unite either or both of them with her, the same provisions are hereby made applicable to them as I have before made for her in reference to bonds and duties and powers."

The question is, does this will create a trust in favor of complainant? Do the recommendations and requests found in the will give an absolute legacy to the complainant out of the estate, and do they constitute an imperative command to make the provision, or is the matter left to the discretion of the surviving wife, as sole devisee and legatee, to act in the matter as her judgment and feelings shall dictate? It cannot be denied that the earlier English decisions and a few of the earlier cases in this country go a long way towards sustaining the claim set up by the complainant. But later cases, both in England and the United States, considerably limit the construction given by the earlier decisions to precatory words of a will, or words of request or recommendation, and some of them, especially in this country, fall little short of repudiating and altogether overruling the earlier cases. Says Story, on this subject:

"In the interpretation of the language of wills, also, courts of equity have gone great lengths by creating implied or constructive trusts from mere recommendatory and precatory words of the testator." 2 Story, Eq. Jur. § 1068.

After considering the English cases he adds:

"The doctrine of thus construing expressions of recommendation, confidence, hope, wish, and desire into positive and peremptory commands is not a little difficult to be maintained upon sound principles of interpretation of the actual intention of the testator. It can scarcely be presumed that every testator should not clearly understand the difference between such expressions and words of positive direction and command, and that, in using the one and omitting the other, he should not have a determinate end in view. It will be agreed on all sides that where the intention of the testator is to leave the whole subject, as a pure matter of discretion, to the good-will and pleasure of the party enjoying his confidence and favor, and where his expressions of desire are intended as mere moral suggestions to excite and aid that discretion, but not absolutely to control or govern it, there the language cannot and ought not to be held to create a trust. Now, words of recommendation, and other words precatory in their nature, imply that very discretion, as contradistinguished from peremptory orders, and therefore ought to be so construed, unless a different sense is irresistibly forced upon them by the context. Accordingly, in more modern times, a strong disposition has been indicated not to extend this doctrine of recommendatory trusts, but, as far as the authorities will allow, to give to the words of wills their natural and ordinary sense, unless it is clear that they are designed to be used in a peremptory sense." 2 Story, Eq. § 1070.

The most favorable rule for complainant now recognized, that can be deduced from the body of the English authorities, is, doubtless, that stated by Lord LANGDALE in *Knight* v. *Knight*, 3 Beav. 173, where he said:

"As a general rule it has been laid down that where property has been given absolutely to any person, and the same person is, by the giver who has power to command, been recommended or entreated or wished to dispose of that property in favor of another. the recommendation, entreaty, or wish should be held to create a trust: (1) If the words are so used that, upon the whole, they ought to be construed as imperative; (2) if the subject of the recommendation or wish be certain: and (3) if the objects, or persons intended to have the benefit of the recommendation or wish, be also certain." See 44 Amer. Dec. 372, note to *Harrisons* v. *Harrisons' Adm'x*, 2 Grat. 1.

On the contrary, in the language of Story: "Wherever, therefore, the objects of the supposed recommendatory trusts are not certain or definite; wherever the *property to which it is to attach is not certain or definite;* wherever a clear discretion or choice to act or not to act is given; *wherever the prior dispositions of the property import absolute and uncontrollable ownership,*—in all such cases courts of equity will not create a trust from words of this character." 2 Story, Eq. Jur. § 1070. See, also, *Howard* v. *Carusi*, 109 U. S. 733, 734; S. C. 3 Sup. Ct. Rep. 575; citing and recognizing the rule as stated by Story, and 2 Pom. Eq. Jur. §§ 1014–1017, where the subject is well discussed.

Upon a careful consideration of the language of the will—giving the words their usual natural signification, as they would, doubtless, be understood almost, if not quite, universally by ordinarily intelligent English-speaking people, without reference to any strained, artificial, or technical rules of construction—it appears to me that two, at least, if not three of these requisite conditions, negatively stated, are found in the will. The "objects of the supposed recommendatory trusts" are, undoubtedly, "certain and definite,"—they are the mother and sister of the testator. But "the property to which it [the trust] is to attach is not certain or definite." "The *subject* of the recommendation or wish" is, surely, not "certain." No specific property or amount is indicated as the subject of the asserted legacy or trust. The testator only "requests" his general legatee and devisee "to make *such gift and provision for them as in her judgment will be best,*" apparently leaving the whole matter to her judgment and discretion. How is the court to determine to what property, or to what amount of money, the trust is to attach? Neither the property nor the amount of money is indicated; and the testator has not left the matter to the judgment of the court to determine, but in express terms to the judgment of his surviving wife, his sole devisee and legatee. The subject is, therefore, not certain or definite. The testator has neither indicated the particular property, nor the particular amount of money, out of the million of dollars in value claimed to have been left, to which the legacy or trust is to attach, nor has he indicated any rule by which the property or amount can be ascertained, other than the judgment of his surviving wife, which judgment she appears to have exercised, for she made gifts from time to time, in small sums, amounting in the aggregate to $1,500. Certainly, the property

or amount of money to which the trust, if any there be, is to attach, —the subject of the recommendation or request, or the subject of the trust,—could not well be more uncertain or more indefinite. In the absence of words expressly creating a trust, this indefiniteness and uncertainty constitute strong evidence that the testator did not intend to create a trust. In language quoted from *Morice* v. *Bishop of Durham*, 10 Ves. 536: "And wherever the subject to be administered as trust property, and the objects for whose benefit it is to be administered, are not to be found in the will, not *expressly* creating a trust, the indefinite nature and *quantum* of the subject, and the indefinite nature of the objects, are always used by the court as evidence that the mind of the testator was not to create a trust; and the difficulty that would be imposed upon the court to say what should be so applied, or to what objects, has been the foundation of the argument that no trust was intended;" or, as Lord ELDON expresses it in another case, (*Wright* v. *Atkyns*, Turn. & R. 159:) "Where a trust is to be raised, characterized by uncertainty, the very difficulty of doing it is an argument which goes, to a certain extent, towards inducing the court to say it is not sufficiently clear what the testator intended." See, also, *Knight* v. *Boughton*, 11 Clark & F. 548;" note to section 1070, Story, Eq. Jur. 284, 285. In the notes to *Harrisons* v. *Harrisons' Adm'x*, 2 Grat. 1, reported in 44 Amer. Dec. 375, and in 2 Story, Eq. Jur. § 1073 *et seq.*, notes, the cases are cited illustrating certainty and uncertainty in a will, within the meaning of the condition of the rule adopted by the courts, as to the subject of the recommendation or request; and, as it appears to me, few of those provisions, held to be too uncertain to create a trust, are more uncertain or indefinite than the provision in the will in question. And, in the language of Lord COTTENHAM in *Finden* v. *Stephens*, 2 Phil. 142: "Words of recommendation are never construed as trusts unless the subject be certain." 44 Amer. Dec. 376. The will in question, therefore, fails in this condition of certainty as to the subject, essential to the creation of a trust by precatory words, even under the English rule most favorable to such trusts now recognized.

Again, under that branch of the rule stated by Story, that wherever "the prior dispositions of the property import absolute, uncontrollable ownership, courts of equity will not create a trust from words of this character." 2 Story, Eq. Jur. § 1070. This will is deficient in this one of the elements from which the intention to create a trust may be inferred. No language can more clearly and unmistakably "dispose of property" absolutely, or "import absolute, uncontrollable ownership" in the devisee or legatee, than the language of this will, making "the prior disposition of the property of the testator," which is: "I give and bequeath to my said wife, Ellen M. Colton, all of the estate, real and personal, of which I shall die seized or possessed, or entitled to." And further on in his will the testator adds: "I authorize and empower her to sell, dispose of, and convey

any and all of the estate of which I shall die seized and possessed, without obtaining the order of the probate court, or of any court, and upon such terms and in such manner, with or without notice, as to her shall seem best." If this language of gift and devise, and this power to dispose of and control, does not constitute "a prior disposition of the property," which "imports absolute and uncontrollable ownership," then I am at a loss to know what would express that idea or effect such a purpose. In this respect, also, the will is deficient in one of the elements suggested by Story as necessary to create a trust from mere precatory words, or words of recommendation, or expressing a desire.

Again, are the words, considered by themselves, "so used as, upon the whole, they ought to be construed as imperative," or is there "a clear discretion or choice to act or not to act" given, irrespective of other elements to be considered. The language, and all the language, to be considered on this point, is, "*I recommend to her the care* and protection of my mother and sister, *and request her to make such gift and provision* for them *as in her judgment will be best;*" or, in effect, I do not myself make any gift or any provision for them, according to my judgment, or determine how much they ought to have, but I recommend them "to her care and protection;" and I "request *her* to make *such* gift and provision for them as in *her* judgment will be best."

By the express terms of the Civil Code of California, "a will is to be construed according to the intention of the testator," and the "testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it is made, exclusive of his oral declarations." "All parts of the will are to be construed in relation to each other, and so, as if possible, to form a consistent whole." "*A clear* and *distinct devise or bequest cannot be affected* * * * by any other words not equally clear and distinct, or by inference or argument* * * * *from other parts of the will.*" "The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained." Civil Code, §§ 1317, 1318, 1321, 1322, 1324. It seems to me that, under these rules, it is impossible to hold it to have been the intention of the testator himself to give absolutely any portion of his estate, to be held in trust for complainant. The language is plain and readily understood, taking the words in their ordinary and grammatical sense. The testator manifestly appreciated the difference, which every one must recognize, between words of absolute devise or bequest, and mere words of recommendation or request. To construe these latter words of recommendation and request as meaning precisely the same thing as words of absolute bequest, would be to give them a meaning entirely different from the sense in which they are ordinarily used and ordinarily understood. The "clear and distinct" prior absolute

"devise and bequest" to the defendant of all his estate, in language which it is impossible to misunderstand, would be materially "affected" by converting an indefinite and unascertainable part of the absolute estate given to defendant into a trust, by *"words not equally clear and distinct,"* by "inference or argument from other parts of the will," contrary to the rule expressly laid down by the Code. Had the testator intended to give any part of his estate absolutely in trust for the complainant, he would certainly have so stated, and would have declared what part, or how much money, he intended to set apart for her. He would have made the extent of his bequest "clear and distinct,"—as clear and distinct as the devise to the defendant, —and not left it to the sole judgment of the defendant to determine the amount or character or value of the bequest, or the extent of his bounty.

The language of the will cited seems to be plain and intelligible. It is not the language of gift or devise, or the language of command. It is clearly language of recommendation and request, leaving the matter to the discretion and judgment of his surviving wife to carry out his suggestion or not, or to such extent as seems to her best, according to the dictates of her own discretion and judgment. Such is the plain import of the words, as they would ordinarily be understood when taken by themselves, and considered by the great mass of English-speaking people, without reference to strained, artificial, or technical rules of construction. They are, as it seems to me, so plain to the common mind as not to need interpretation. But when we come to call in other elements recognized by the rules of construction heretofore adopted by the courts for the purpose of aiding in converting the recommendation and request into a command or gift, we still find that all these elements except one—the certainty as to the objects—are wanting. The testator manifestly understood the force of language. He knew well what language to use to express his intention to make a devise or bequest. There is no uncertain sound in "I give and bequeath to my wife, Ellen M. Colton, all of the estate, real and personal, of which I shall die seized or possessed." If he had intended to make a gift, bequest, or devise to his mother and sister, he certainly knew in what language to express that intent, and he would have said so, and how much. He has expressed, in specific language, no intention to give to them directly, or to any one in trust for them, any portion of his estate; or, if any portion, what particular portion, or how much. He has simply used words of recommendation and request to his sole devisee and legatee, and left the whole matter, in express terms, to her judgment. This is the plain, natural meaning of his language, when taken by itself, or when considered in connection with all the other language of the will. When we consider the concise, clear, and specific language of this brief will, in all its other parts, it seems impossible that the testator should have used words of mere recommendation

and request to his wife, committing the whole matter, as to the gifts and provisions for them, in express terms, to her judgment; that he should have requested her to make the gift, when he intended to make a gift, legacy, or devise to them himself,—when he intended to command.

. It is urged, on the part of the claimant, that in this class of cases a wish expressed or a simple request to the devoted and obedient wife is equivalent to a command. This, when voluntarily recognized as an obligation by the wife in the affairs of married life, may be a very proper and salutary principle and practice in marital polity and domestic etiquette; but it is too romantic, too largely deficient in the sanctions of the obligations of positive law, too loose and uncertain, to be adopted by the courts as a rule of law by which large estates are to be distributed, in opposition to the plain, ordinary, actual, matter-of-fact sense of the words of a will. As to myself, I fully concur with Vice-chancellor HART in his observations in *Sale* v. *Moore*, 1 Sim. 540, "that the first case that construed words of recommendation into a command made a will for the testator, for every one knows the distinction between them." He further adds that "the current of authorities of late years has been against converting the legatee into a trustee." See 44 Amer. Dec. 378, note. In my judgment, to hold that the precatory words and words of recommendation found in the will of the late Gen. Colton creates an indefinite trust in an unascertained and uncertain *quantum* of the estate of the deceased in the hands of Mrs. Colton, for the benefit of the mother and sister of the testator, would be to make a will for the deceased, and not to execute the will made by him.

An argument is sought to be derived, in favor of a construction creating a trust, from the last two clauses in the will, relating to co-executors. In case the executrix should desire assistance in the execution of the will, the testator provisionally appoints two other gentlemen as executors, and authorizes the executrix to associate either one or both as co-executor or co-executors, "and in case she shall so unite either or both with her, the same provisions are hereby made applicable to them as I have before made for her *in reference to bonds and duties and powers.*" It is argued that under this provision the recommendation and request as to care and provision for the testator's mother and sister would impose the same trust on them as is imposed upon Mrs. Colton, and that, certainly, as to them the request is equivalent to a command, and being so as to them, they must have the same construction with respect to Mrs. Colton. But the character of Mrs. Colton as executrix, and as devisee and legatee, are wholly different and distinct. These words of recommendation and request were addressed to her as the wife of the testator, and his devisee and legatee, and not as the executrix of his will,—as owner and not administratrix of his estate. She has performed all her trusts as executrix; the estate has been settled and distributed to her as

devisee and legatee, and she has been discharged from her trust as executrix. So it appears from the bill.

This suit is brought against her to enforce a trust vested in her as legatee, for the benefit of complainant, and not against her in her representative character of executrix. So, the closing passage of the will, making the same provision applicable to her co-executor or co-executors in the contingency provided for, "as I have before made for her in reference to bonds and duties and powers," has sole reference to the bonds waived, and to the "duties and powers" conferred on her as executrix. It confers no rights or powers or duties upon these co-executors in the character of devisees or legatees; and no argument can be derived from this passage to support the creation by the court of a trust.

Upon the views thus taken upon the construction of the will it is unnecessary to notice the other points argued under the demurrer. The demurrer is sustained, and, as the whole case depends upon the construction of the will, no amendment can be made to the bill that will obviate the objection taken by the demurrer. The bill must therefore be dismissed; and it is so ordered.